**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KATHLEEN C., | ) | |
| | ) | |
| Plaintiff, | ) | No. 19 cv 1564 |
| | ) | |
| v. | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| ANDREW M. SAUL, Commissioner of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kathleen C.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her disability benefits. Plaintiff has filed a motion for summary judgment [dkt. 13]; the Commissioner has filed a cross-motion for summary judgment [dkt. 22]. As detailed below, Plaintiff's motion for summary judgment [dkt. 13] is DENIED and the Commissioner's motion for summary judgment [dkt. 22] is GRANTED.

## I. Background

### a. Procedural History

Plaintiff was born in 1956. [Administrative Record ("R.") 134.] Plaintiff applied for Disability Insurance Benefits on April 29, 2015, alleging a disability onset date of June 22, 2014. [R. 134-35]. Plaintiff's claim was denied initially and again upon reconsideration. [R. 13.] Following these denials, Plaintiff appeared at an August 22, 2017 Administrative Hearing before Administrative Law Judge ("ALJ") Janice Bruning. [R. 28-49.] On November 16, 2017, ALJ Bruning issued an unfavorable decision. [R 13-21.] Plaintiff requested and was denied Appeals Council review [R. 1-3], making the Decision of the Appeals Council the final decision of the Commissioner. Plaintiff filed the instant

---

1 In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

action on March 5, 2019, seeking review of the Commissioner's decision. [Dkt. 1.]

**b. Relevant Background**[2]

On November 10, 2014, Plaintiff was diagnosed with left knee pain, and tingling and numbness in the leg. [R. 285.] On May 16, 2015, Plaintiff presented at the emergency room with severe and worsening right knee pain and buckling, and left anterior hip pain. [R. 250-252.] The treating physician noted that Plaintiff leads a sedentary lifestyle and is obese. *Id.* X-rays revealed mild tricompartmental joint space narrowing and spur formation. [R. 253.] Two weeks later, a right knee examination revealed mild swelling and crepitus. [R. 286.] She was diagnosed with osteoarthritis of the right knee and bilateral knee pain. [R. 289, 291.] An epidural steroid injection was administered in her right knee; Plaintiff noted that a prior left knee steroid injection was "helpful for months." [R. 287, 289.] On January 29, 2016, Plaintiff presented with low back pain (at a level of 8/10) radiating to the legs. [R. 298.] On April 5, 2016, treatment notes indicate Plaintiff had been experiencing low back pain extending into the thighs bilaterally, with difficulty standing and walking. [R. 412.] An MRI revealed stenosis at L3-4 and L4-5. *Id.* A lumbar epidural steroid injection was administered. *Id.* Plaintiff received additional lumbar epidural steroid injections on July 1, 2016 and August 2, 2016. [R. 424, 435.] On December 30, 2016, Plaintiff again presented with right knee pain. [R. 268.]

On or about November 10, 2014, Plaintiff was diagnosed with arthritis and carpal tunnel syndrome. [R. 285.] On October 19, 2015, Plaintiff underwent an epidural steroid injection for left hand pain. [R. 407.] In a check-up a few weeks later, Plaintiff reported a "significant decrease in symptoms," but noted that she experienced occasional painless triggering in the left ring finger and also pain and aching in the right pinky finger. [R. 408.] On June 10, 2016, Plaintiff presented with left hand numbness and tingling. [R. 419.] She was diagnosed with left carpal tunnel syndrome and

2 The relevant medical background summarized in this section is categorized roughly by ailment rather than chronologically as the Court would normally list such information.

underwent a left forearm steroid injection. *Id.*

On February 27, 2015, an audiology report indicated that Plaintiff had mild bilateral sensorineural hearing loss, but perfect word recognition ability despite this hearing loss. [R. 244.]

On May 29, 2015, Plaintiff was diagnosed with depression. [R. 287.] On September 11, 2015, Plaintiff underwent a psychological consultative examination. [R. 276-79.] It was noted she had suffered from depression for about 15 years, worsening when she approached her late 40's. [R. 276.] The examiner noted that Plaintiff takes various prescription psychotropic medications, and that she was not at that time in counseling or psychotherapy. [R. 277.] He diagnosed Plaintiff with persistent depressive disorder. [R. 279.] On September 2, 2016, Plaintiff began seeing counselor Detrall Dearbone-Collins, MS, LCPC, CADC. [R. 439-52.] Plaintiff reported problems with depression and insomnia, and relayed that she was taking medication for emotional difficulty and sleep issues. [R. 439, 442.] Ms. Dearbone-Collins diagnosed Plaintiff with major depression. [R. 452.] From that time through August 2017, Plaintiff underwent counseling with Ms. Dearbone-Collins. [R. 453-61.] Mental status examinations during this time consistently revealed normal memory, judgment, thought process, and concentration, even though Ms. Dearbone-Collins also noted that Plaintiff was depressed with a flat affect. *Id.*

On August 11, 2015, Plaintiff underwent an internal medicine consultative examination. [R. 269-72.] She presented with a slight limp and a knee brace, and reported radiating low back pain at a level of 8/10. *Id.* She reported having epidural injections that did not help. *Id.* She also had osteoarthritis involving her hip, knee, and feet. *Id.* Examination revealed reduced lumbar range of motion and sensory deficits in the left lower extremity. *Id.* At 5'4", Plaintiff weighed 211 pounds. *Id.*

**c. The ALJ's Decision**

On January 22, 2018, the ALJ issued a written decision denying Plaintiff disability benefits. [R. 13-21.] At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity

since her alleged onset date of June 22, 2014 through her date last insured. [R. 15.] At Step Two, the ALJ found that Plaintiff had the severe impairments of right knee disorder; left knee disorder; carpal tunnel syndrome; finger complaints; and obesity. *Id.* At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R. 17.] Before Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with the following limitations: she can never climb ladders, ropes or scaffolds; she can perform no more than occasional ramp or stair climbing, balancing, stooping, crouching, kneeling, crawling, bending or twisting; she must be permitted to use a cane as needed to get to and from her workstation; she requires a sit/stand option allowing for an opportunity to stand for 1-2 minutes after sitting 2 hours; she can have no more than frequent bilateral overhead reaching and no more than frequent use of her hands for handling, fingering and feeling. [R. 18.] At Step Four, the ALJ found Plaintiff capable of performing her past relevant work as a secretary. [R. 21.] Because of these determinations, the ALJ found Plaintiff not disabled under the Act. *Id.*

## II. Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment (or combination of impairments) meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. §§ 404.1520, 404.1523, 404.1545, 416.920(a)(4)(i)-(v). While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be

critical to the outcome of a claim. S.S.R. 96-8p, 1996 WL 374184, *5 (July 2, 1996). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id.* At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show that there are jobs that the claimant is able to perform, in which case a finding of not disabled is due. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

## III. Discussion

Plaintiff contends there are several problems with the ALJ's opinion: (a) the ALJ's RFC finding allegedly failed to account for any limitations or exacerbations arising from (i) Plaintiff's depression, (ii) Plaintiff's obesity, (iii) Plaintiff's hearing impairment, and (iv) Plaintiff's upper extremity limitations; and (b) the ALJ allegedly dismissed Plaintiff's subjective statements without proper explanation. The Court disagrees with these contentions and addresses each in turn.

### a. The RFC Finding Properly Accounts for Plaintiff's Limitations

#### i. Plaintiff's Depression

Plaintiff argues the ALJ failed to allow for any limitation within the RFC arising out of Plaintiff's depression. The Court, however, finds that substantial evidence supported the ALJ's mental RFC assessment.

"In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the [ALJ's] ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). Here, the ALJ determined Plaintiff's depression was a non-severe ailment, and determined that Plaintiff had the mental RFC to work, citing ample evidence of non-severe mental capacity.

The ALJ noted that Plaintiff did not attend counseling during the alleged period of disability, and observed that Plaintiff first entered therapy "over eight months after her insured status expired" with Ms. Dearbone-Collins. [R. 16, 19, 277, 461.] The ALJ recounted that, despite exhibiting depression at her September 2015 mental-status examination, Plaintiff was alert with normal thought processes, abstract reasoning, concentration, and judgment. [R.16-17, 19, 277-79.] The ALJ also noted that the record did not reflect "any functional limitations related to a mental disorder." [R.16.] On the contrary, she observed, Ms. Dearbone-Collins's notes established that Plaintiff consistently demonstrated normal memory, judgment, thought process, and concentration (even while depressed

with a flat affect). [R. 19-20, 453-61.]

The ALJ also detailed other evidence of Plaintiff's mental abilities through her daily activities: the ALJ noted Plaintiff was able to drive, live independently, manage her finances, read mystery novels, use a computer and an iPad, correspond via email, and denied problems caring for herself. [R. 16-19, 37-40, 184-87, 206-08, 277.] She also noted Plaintiff was able to comport herself normally around others well enough to shop four times a week, go to movie theaters and restaurants with friends, and travel out of town. [R. 16-17, 184-87, 206-08, 461.] The Court considers this evidence to be enough to satisfy the "minimum level of articulation" required of the ALJ in supporting her determination that Plaintiff's RFC should include no mental limitation. *Hodges v. Barnhart*, 399 F. Supp. 2d 845, 855 (N.D. Ill. 2005) (citing *Stephens v. Heckler*, 766 F.2d 284, 288 (7th Cir. 1985) ("'[m]inimum level of articulation' is sufficient articulation to demonstrate that the ALJ considered the evidence the law requires him to consider.").

Moreover, Plaintiff failed to show how any of her alleged impairments "imposed particular restrictions on her ability to work." *See, e.g.*, *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019) (affirming ALJ's opinion where plaintiff cited no evidence his alleged non-physical deficits kept him from performing simple, routine, and repetitive tasks; even if ALJ's RFC assessment were flawed, any error was harmless because Plaintiff did not identify more stringent work restrictions to accommodate deficits); *Weaver v. Berryhill*, 746 F. App'x 574, 578-79 (7th Cir. 2018) (claimant must prove functional limitations); *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008) (claimants bear burden of proof to prove disability and associated lack of evidence supporting their claims). Along with the fact that Plaintiff failed to identify any restriction(s) which might address her alleged limitations, the record itself contains no opinion more restrictive than the RFC – a fact "illuminating and persuasive on its face." *Castile v. Astrue*, 617 F.3d 923, 930 (7th Cir. 2010); *see also Hosea M. v. Saul*, 2019 WL 5682835, at *7 (N.D. Ill. Nov. 1, 2019). On this point, the Seventh Circuit has held that "[t]here is no error

when there is 'no doctor's opinion contained in the record that indicated greater limitations than those found by the ALJ.'" *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) (citing *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)). The Court agrees with Defendant that there is no error here because no opinion of record found Plaintiff more limited than the RFC.

Contrary to Plaintiff's assertion, the ALJ did not ignore or dismiss Ms. Dearbone-Collins's diagnosis of depressive disorder – in fact, the ALJ noted it twice.[3] [R. 19-20.] The ALJ simply found no evidence of significant functional limitations associated with that diagnosis. [R. 16.] As Defendant succinctly notes, "a diagnosis does not establish a functional limitation." [Dkt. 23, p. 11]; *Richards v. Berryhill*, 743 F. App'x 26, 30 (7th Cir. 2018) ("pointing to various diagnoses and complaints and saying that they might hinder [plaintiff] is insufficient to establish the existence of a functional limitation.") While Plaintiff makes much of the fact the ALJ did not mention Plaintiff's flat affect and depressed mood at sessions with Ms. Dearbone-Collins (the same sessions where Plaintiff consistently demonstrated normal functional abilities), Plaintiff fails to hypothesize as to what kinds of work restrictions might address her depression. *See Jozefyk*, 923 F.3d at 498; *see also Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) ("ALJ need not provide a written evaluation of every piece of evidence."). Moreover, the ALJ acknowledged Ms. Dearbone-Collins's diagnosis of depression but found it noteworthy that her progress notes demonstrated Plaintiff was still able to function normally in the areas of memory, judgment, thought processes, and concentration while dealing with her depression. [R. 20-21.] The ALJ did not commit error by focusing on Ms. Dearbone-Collins's unwavering reports

---

3 The ALJ also noted that Ms. Dearbone-Collins did not complete Social Security documents for the Plaintiff. [R. 20, 452.] The Court does not agree with Plaintiff that this notation means the ALJ determined that Ms. Dearbone-Collins's mental diagnoses "simply do not exist." [Dkt. 14, p. 7.] There is no evidence the ALJ thought Ms. Dearbone-Collins was *refusing* to fill out the forms or that there was any particular reason for the failure to complete the documents; indeed, there are many benign reasons why a medical professional may not fill out these documents, and the Court does not believe the ALJ here used Ms. Dearbone-Collins's failure to complete the same as evidence to doubt the severity of Plaintiff's mental condition. *See Gonzalez v. Astrue*, 2011 WL 4538081, n.7 (S.D. Ind. Sept. 29, 2011) (as one medical expert within the Seventh Circuit acknowledged, physicians may not fill out forms "simply because of time or they don't feel they've seen the patient enough.").

of Plaintiff's normal functionality despite her depressed mood and flat affect.

Additionally, the Court finds the ALJ properly gave some weight to the opinion of reviewing psychologist Dr. Kirk Boyenga,[4] who found that (a) the plaintiff had only mild limitations in the paragraph-B areas, (b) her "mental impairment [wa]s not severe," and (c) she was not disabled. [R. 20, 66-70.] Dr. Boyenga was able to review all available medical evidence and was an expert in Social Security disability programs and their evidentiary requirements. [R. 62-64]; 20 C.F.R. §§ 416.927(c)(6), 416.913a(b)(1). And his conclusions support the ALJ's determination that the Plaintiff had no significant limitations in mental functioning.

As to Plaintiff's subjective statements about her mental impairments, the Court finds the ALJ properly evaluated these as well. An ALJ's credibility determination is afforded "considerable deference" on review and may only be overturned if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Green v. Saul*, 781 F. App'x 522, 527 (7th Cir. July 23, 2019) (when ALJ's subjective symptoms assessment "was tied to evidence in the record and was not patently wrong," it could not be disturbed). While an ALJ may assess whether a plaintiff's alleged symptoms are consistent with the medical evidence, the ALJ may not simply reject a plaintiff's claims if the plaintiff seems untruthful. SSR 16-3p. However, an ALJ is only required to give reasons sufficient to provide a fair sense of how the ALJ assessed plaintiff's statements, and the court should affirm an ALJ's finding so long as he gave "specific reasons that are supported by the record." SSR 16-3p, 2017 WL 5180304; *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004). Only when an ALJ's assessment "lacks *any* explanation or support…will [the court] declare

[4] There is some upset on Plaintiff's part that the ALJ erroneously referred to psychologist Dr. Boyenga's opinion as the opinion of an "internal medical consultant." To be sure, the ALJ summarized the opinions of both reviewing physician Dr. Kareti and reviewing psychologist Dr. Boyenga in a single sentence, referring to them as "medical consultants." [R. 20, 61-70.] However, in the report the ALJ cited, only Dr. Boyenga opined on the plaintiff's mental abilities. *Id.* Therefore, the Court agrees with Defendant that it is clear the ALJ referred to psychologist Dr. Boyenga's opinion – not that of an "internal medical consultant" – when she noted that a reviewing expert found that "claimant did not have a severe mental impairment." *Id.*

it to be 'patently wrong.'" *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008) (citations omitted; emphasis added).

Here, the ALJ found Plaintiff's subjective statements about her mental health "not persuasive" and noted that Plaintiff was "not in any distress at the hearing." [R.20.] She considered Plaintiff's claims that she lost track of conversations more often, let a pot burn on the stove, and that she read novels and articles but that it "takes longer to get into" these than it used to. [R. 18, 42.] But the ALJ reasoned that the record as a whole contradicted the notion that Plaintiff had significant mental-functioning limitations. [R. 16, 20.] She noted Plaintiff's "wide range of activities" (including, *inter alia*, driving, traveling out of town, going to the movies and restaurants with friends, reading mystery novels, and managing her finances) demonstrating her abilities to concentrate, get along with others, understand and remember information, and manage herself. [R. 10-11, 16-17.] Although Plaintiff complains the ALJ relied too heavily on her broad spectrum of activities, it is proper for an ALJ to consider a claimant's activities in determining her functional limitations or whether she has exaggerated them. *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016); 20 C.F.R. § 404.1529(c)(3)(i).

Plaintiff's many acknowledged activities demonstrated to the ALJ Plaintiff's cognitive functionality, and the Court finds no reason to disturb this finding. The ALJ concluded that when viewed together, Plaintiff's daily activities, ability to work as a secretary previously, and that the start of her psychological therapy regimen began "over eight months after her insured status expired" [R. 16], and all undermined Plaintiff's credibility when describing her disability. These are precisely the type of factors the ALJ was required to consider. *Pepper v. Colvin*, 712 F.3d 351, 369 (7th Cir.2013). Because the ALJ provided some support for her assessment of Plaintiff's subjective claims, which the Court does not find to be patently wrong, this finding is supported by substantial evidence and will not be overturned. *Hodges*, 399 F. Supp. 2d at 855 ('minimum level of articulation' sufficient to demonstrate ALJ considered evidence required).

As to whether Plaintiff's alleged mental deficits warranted an RFC limitation when considered "in combination" with her other impairments, the record on this point still does not warrant any mental limitation in the RFC. Plaintiff must do more than simply show proof of multiple impairments in order to qualify as disabled; she must show that these multiple impairments result from anatomical, physiological, or psychological abnormalities which are demonstrable by objective medical evidence. 20 C.F.R. § 404.1527(a)(1). The objective medical evidence, particularly Ms. Dearbone-Collins's own records, did not show that Plaintiff's depression significantly interfered with her activities or increased the severity of her other impairments. When considering the Plaintiff's depression and the impact it had on her functional capacity, the ALJ correctly found that her depression did not greatly limit her mental ability to perform basic work activities. [R. 20-21.] The fact that each element of the record was discussed individually by the ALJ hardly suggests that the totality of the record was not considered, particularly in view of the fact that the ALJ specifically referred to "a combination of impairments" in deciding that Plaintiff did not meet or equal the listings. [R. 17.] Although the ALJ might have drafted a cleaner decision by including the word "depression" directly in her Step Three analysis, the Court does not find this a remandable error. Indeed, even if there were any error, it would be a harmless error because the Court finds the ALJ adequately considered Plaintiff's activities and progress in Ms. Dearbone-Collins's notes to discount Plaintiff's testimony and subjective statements concerning any depression that might have needed to be considered in combination with other impairments. It is not for the district court to re-weigh evidence but only to determine if there was enough evidence for the ALJ to logically reach her conclusion concerning Plaintiff's depression. *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir.1999). The Court finds there was.

Plaintiff also complains that the ALJ asked the vocational expert ("VE") about a hypothetical mental limitation she did not include in the RFC. [Dkt. 14, p. 14.] In reality, Plaintiff's problem in this area appears to be that of the over-inclusive hypothetical. The fact that an ALJ considers adding a

mental limitation to an RFC does not establish that such a limitation is ultimately warranted. In fact, it "is not reversible error where the hypothetical question posed to the VE was more restrictive than the limitations the ALJ ultimately assigned to the claimant." *Perez v. Barnhart*, 2003 WL 22287386, at *10 (N.D. Ill. Sept. 30, 2003) (citing *Reynolds v. Bowen*, 844 F .2d 451, 455 (7th Cir.1988)). In this case, the ALJ's hypothetical question to the VE[5] simply proves she gave due consideration to the matters about which she inquired. In the same vein, Plaintiff insists the ALJ "ignored the reality that Plaintiff would likely be off task more than what is acceptable." [Dkt. 14, p. 14.] However, Plaintiff failed to substantiate this "reality" with any citation to the record and the Court did not independently find anything in the record to substantiate this allegation.[6] The Court declines to remand on this basis.

Lastly with respect to Plaintiff's mental functioning, Plaintiff makes the argument that the ALJ ignored a September 2, 2016 psychological evaluation. However, in reality, Plaintiff has mistakenly asserted that her subjective responses on a "Checklist of Concerns" constituted a "psychological evaluation." [R. 442-47.] That questionnaire invited the Plaintiff to mark items she thought applied to her. [R. 446.] Thus, the items checked as "problem areas" by Plaintiff are not the result of a "psychological evaluation" – they are simply additional subjective claims that were, for the reasons discussed above, of limited evidentiary value to the ALJ.

Because it does not appear there are any evidence-based restrictions stemming from Plaintiff's depression that the ALJ could include in a revised RFC finding on remand, the Court declines to remand on this issue.

**ii. Plaintiff's Obesity**

Next, Plaintiff contends the ALJ improperly considered her obesity. Plaintiff is obese (not

5 The ALJ built upon her prior hypothetical in asking the VE whether the "individual could understand, remember and carry out no more than simple, routine tasks" and still be able to perform their past relevant work. [R. 48.] The VE answered in the negative. *Id.* Ultimately, the ALJ did not include any mental limitation within her RFC finding.

6 While the VE was asked the acceptable rates of off-task behavior and absenteeism [R. 48], Plaintiff failed to point to anything in the record discussing her actual off-task propensity or absenteeism.

morbidly obese, as she attempts to cast it several times in her brief [dkt. 14, pp. 5, 10]), with a BMI measuring between 36.2 and 37.8. [R. 32, 269-72.] Contrary to Plaintiff's contention, the ALJ both listed Plaintiff's obesity among her impairments and considered its interaction with her other impairments, particularly her knee and back ailments. [R. 15, 17, 20 (Plaintiff's "obesity is also considered [in]…limiting the claimant to sedentary work as her weight could add stress to her knees and back when she is on her feet prolonged periods of time.").] Thus, the ALJ fulfilled her relevant duty. *See Lovelace v. Barnhart,* 187 F. App'x 639, 643 (7th Cir. 2006) (ALJ should consider obesity for its incremental effect on underlying disabilities). Moreover, the ALJ explicitly tied Plaintiff's obesity to her RFC's postural limitations and sedentary-work restriction. [R. 20.] And that RFC notably included greater limitations than those found by reviewing physician Dr. Prasad Kareti, who had considered medical records reflecting Plaintiff's obesity. [*Id.*, 61-70, 252, 332, 340.] *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (ALJ can account for claimant's obesity by adopting limitations suggested by reviewing doctors who were aware of it); *Prochaska*, 454 F.3d at 736-37 (same). Even if the ALJ had not thus amply considered Plaintiff's obesity, Plaintiff fails to meet her threshold burden to specify how obesity affected her functioning or impaired her ability to work,[7] which would render any error in this arena harmless if one existed. *Prochaska*, 454 F.3d at 736-37 (adopting limitations of doctors who were aware of obesity combined with failure to articulate limitations renders error harmless); *Lovelace*, 187 F. App'x at 643 (affirming ALJ where plaintiff did "not specify how his obesity in combination with any of his impairments affected his ability to work"). For these reasons, the Court declines to remand on this basis.

---

7 Plaintiff relies on a single page of her own testimony (that does not even tangentially mention obesity), in support of her argument that her obesity affected her functioning. [Dkt. 14, p. 11 (citing R. 34)]. Thus, similar to Plaintiff's depression, discussed *supra*, Plaintiff failed to substantiate her obesity argument with any citation to the record and the Court did not independently find anything in the record to substantiate this allegation.

**iii. Plaintiff's Hearing Impairment**

Similarly, Plaintiff contends the ALJ improperly considered her hearing deficits, which she claimed caused difficulty understanding conversations. [Dkt. 14, p. 11; R. 244.] With respect to any hearing loss, the ALJ concluded that the record contained "no evidence…of any functional limitations related to claimant's hearing." [R. 16.] In fact, the ALJ discussed the audiology report cited by Plaintiff, noting that it showed only "mild" loss that had no effect on her word recognition. [R. 19, 244] (Plaintiff had normal hearing from 250-1000 Hz, mild bilateral hearing loss from 2000-8000 Hz, and her "word recognition ability…was excellent (100%) for each ear"). Not only does Plaintiff fail to explain how this report demonstrates any functional limitations, but Plaintiff also fails to identify how her alleged hearing deficit "imposed particular restrictions on her ability to work," or identify any restriction that could have accommodated her alleged hearing loss. *Jozefyk*, 923 F.3d 492; *see also Weaver*, 746 F. App'x at 578-79 (claimant must prove functional limitations); *Eichstadt*, 534 F.3d at 668 (same). The Court finds the ALJ duly considered the evidence cited by Plaintiff, and this evidence fails to prove that Plaintiff had specific, functional hearing limitations unaddressed by the RFC. The Court declines to remand on this basis.

**iv. Plaintiff's Upper Extremity Limitations**

Next, Plaintiff insists that the ALJ failed to explain how the RFC, which limited Plaintiff to frequent handling, fingering, and feeling with her hands, accommodated Plaintiff's upper extremity impairments. However, this argument suffers from the same key problem as Plaintiff's other arguments in that Plaintiff fails to demonstrate that her carpal-tunnel syndrome or finger impairment resulted in any particular functional restrictions, as noted by the ALJ. [R. 17.] The records relied on by Plaintiff do not identify objective evidence that her carpal-tunnel or finger impairments even compromised her ability to perform any fine or gross manipulation, reaching, handling, fingering, or feeling activities. [R. 285, 407-08, 419.] As the Court noted before, diagnosis does not prove disability,

and a claimant must prove that her impairments "imposed particular restrictions on her ability to work." *Weaver*, 746 F. App'x at 578-79.

Instead, Plaintiff relies on records of her subjective complaints and conservative treatment with steroid injections [dkt. 14, p. 12 (citing R. 407-08, 419)][8], which do not prove any functional limitation unaddressed by the RFC, particularly because the ALJ found Plaintiff's subjective reports "not persuasive" and inconsistent with her numerous activities "inside and outside the home." [R. 20.] Those activities included several requiring the ability to hold and manipulate objects, such as household repairs, gardening, driving, grocery shopping, lawn mowing, and snow shoveling. [R. 16-17, (citing R. 184-87, 207-08, 277-79); R. 18 (citing R. 37-40); R. 19 (citing R. 184-87, 205-08).] In fact, the ALJ found that these activities, in addition to all the others she must perform solo as she lives alone, belied her claims that her upper extremity impairments were so severe that she frequently dropped objects. [R. 20.] 20 C.F.R. § 404.1529(c)(3)(i) (ALJ can consider claimant's daily activities). Because the ALJ thus provided it support, her evaluation of Plaintiff's subjective claims must stand. *See Elder*, 529 F.3d at 413-14.

As a whole, the Court finds the ALJ's rationale provides sufficient explanation for why she incorporated the handling limitation she did into Plaintiff's RFC and, ultimately, found the Plaintiff healthy enough for sedentary work. The Court will not remand the ALJ's decision on this basis.

**b. The ALJ Adequately Addressed Plaintiff's Subjective Statements**

Lastly, Plaintiff argues the ALJ allegedly dismissed her subjective statements as "exaggerated" without sufficient explanation for having done so. The Court disagrees.

It is the job of the ALJ to focus on a claimant's subjective statements' consistency with other evidence, rather than on claimant's propensity for truthfulness or character. SSR 16-3p. With respect

---

8 The ALJ did acknowledge that Plaintiff received steroid injections for her upper extremity pain. [R. 19.] But the Seventh Circuit has found that such injections constitute conservative treatment. *Olsen v. Colvin*, 551 F. App'x 868, 875 (7th Cir. 2014).

to a claimant's subjective statements, a reviewing court "defers to the presiding ALJ, who has seen the hearing up close." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019). Because the ALJ is in the best position to observe witnesses, a reviewing court will only disturb an ALJ's evaluation of a plaintiff's subjective claims only if the plaintiff demonstrates the ALJ's evaluations are "patently wrong." *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008); *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007). And such an evaluation is patently wrong "only when [it] lacks any explanation or support." *Elder*, 529 F.3d at 413-14. To determine their consistency with objective medical evidence an ALJ may evaluate a claimant's (1) daily activities; (2) symptoms' location, duration, frequency, and intensity; (3) factors that precipitate and aggravate the symptoms; (4) type, dosage, effectiveness, and side effects of medications; (5) treatment sought other than medication; (6) other measures taken to relieve symptoms; and (7) any other factors concerning a claimant's alleged limitations. 20 C.F.R. § 404.1529(c)(3)-(4); SSR 16-3p.

Here, the ALJ reasonably concluded Plaintiff's limitations were not as restrictive as claimed. [R. 20.] The ALJ considered, *inter alia*, Plaintiff's claims that she (a) frequently dropped things; (b) could walk only a half block; (c) could stand for only fifteen minutes; (d) could sit for only two hours, after which pain forces her to "get up" or, "if it's really bad," recline; and (e) needed to recline regularly during the day. [R. 18, 34-40.] Having observed her testify, the ALJ found Plaintiff "not persuasive." [R. 20.] However, the ALJ did not simply deem Plaintiff unreliable; she provided several specific reasons for her assessment, drawn from both the record and her own observations. *Id.* For instance, the ALJ noted that, despite her claims of disabling pain, Plaintiff "did not demonstrate any pain behavior" at the hearing. *Id.* Similarly, the ALJ noted that although Plaintiff claimed to require a cane for walking, "she was able to ambulate normally at the hearing without any assistive device." *Id.* The ALJ also found Plaintiff's claims inconsistent with the record. For instance, she observed that the record contained no medical recommendation supporting Plaintiff's professed need to recline

regularly.[9] *Id.*; 20 C.F.R. § 404.1529(c)(4); SSR 16-3p. And, as discussed above, ALJ further found that Plaintiff's broad spectrum of activities "inside and outside the home" – *e.g.*, household repairs, gardening, driving, grocery shopping, lawn mowing, and snow shoveling – belied the severity of Plaintiff's upper extremity limitations. *Id.*; 20 C.F.R. § 404.1529(c)(3)(i). Additionally, as the ALJ observed, x-rays taken in response to Plaintiff's complaints of knee pain showed only mild joint-space narrowing and spur formation. [R. 19, 253.] Similarly, the ALJ noted that Plaintiff walked with a normal gait even after the period of alleged disability. [R. 19, 423.] And although an MRI four months after the alleged period of disability showed some lumbar stenosis (*i.e.*, narrowing), the ALJ observed that Plaintiff's straight leg-raise test was normal during the relevant period. [R. 19, 271.] Likewise, while Plaintiff had been diagnosed with carpal-tunnel syndrome, the ALJ noted that the medical records did not show objective evidence that Plaintiff's carpal-tunnel or finger impairments compromised her ability to perform fine or gross manipulation. [R. 17, 19, 419.] Finally, the ALJ acknowledged that Plaintiff received steroid injections for her knee, back, and upper-extremity pain [R. 19], which constitute conservative treatment. *Olsen*, 551 F. App'x at 875.

The Court finds this support to be "more than a mere scintilla" of evidence, and sufficient to fulfill the ALJ's obligations concerning evaluation of a claimant's subjective symptoms. *See Biestek*, 139 S. Ct. at 1154. Because the ALJ provided support for her subjective symptom evaluation and resulting sedentary RFC, her evaluation of Plaintiff's subjective claims will not be reversed.

---

9 While Plaintiff claims this information "simply cannot exist" (dkt. 14, p. 13), the Court finds the ALJ correct in her recognition that such evidence could appear in the form of a doctor's recommendation in treatment notes. [R. 20.] As Defendant observes [dkt. 23, p. 9], it could also come in the form of medical opinion evidence. But whatever the form of evidence supporting her professed limitations, it is Plaintiff's burden to present it, and she failed to do so; she cannot substantiate her claims by insisting they are impossible to substantiate. *See Eichstadt*, 534 F.3d at 668.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment [dkt. 13] is DENIED and the Commissioner's motion for summary judgment [dkt. 22] is GRANTED.

Entered: 5/7/2020

Susan E. Cox,
United States Magistrate Judge